OPINION OF THE COURT — bv the
IIom. Chief Justice TURNER.
This bill is filed to vacate a patent granted on a certificate of the board of commissioners west of Pearl river, to White, as a donation claim, by virtue of the second section of the act of congress of the 3d of March, 1803, regulating the grants of land, and providing for the disposal of the lands of the United States south of the state of Tennessee, on the ground that the certificate was obtained by fraud and peijury, and that the complainant, or the person under whom he claims is a subsequent purchaser of the United States, of the same land. The bill is demurred to.
This bill does not inform us how the United States proceeded to sell a tract of land, of which they had once divested themselves. It does not inform us of the numbers of the sections claimed by them respectively, nor does it exhibit a map or connected plot, to inform us how this confliction was produced.
We learn from the above recited act, that the government first proceeded to ascertain the individual land claims in the territory, and then to sell the residue, and the residue only; and wc are entirely at a loss, in our endeavors to ascertain how the complainant could have become the purcha *491 ser of a tract of land of the United States, to which they had previously acknowledged a right in said White. The patent, it is true, must be founded upon the authority of the congress of the United States, which alone is competent to dispose of the public domain, and, without which authority, the patent would be invalid. Yet, that want of authority does not exist in this case. The board of commissioners were vested with full and plenary powers on this subject, to decide upon all claims of this description, and their decisions are made final against the United States, and are not subject to reversal by this court. The facts set forth in the bill, and exhibits, show that Barland claims section 46,. and that Ross claims fractional section 24, of township 10, range 3 east. .
As it appears in the land office that the United States never intended to sell the land thus granted to White, but that Boss purchased a section other than White’s at the land sales held at the land office, we cannot admit that a title to land can be thus disturbed at the instance of a mere volunteer, showing no interest in himself. ■
If it were admitted that White, or his legal representative had defrauded the government in the manner sot forth in the complainant’s bill, and we were to vacate the grant, it would follow, in this case, that the land would become again vacant land, and subject to sale, as other forfeited land claims, so that the complainant could gain nothing by it.
Ifitvmre really true that the register of the land office has undertaken to sell to Ross the land granted to White, in pursuance to the provisions of the acts of congress, and in strict conformity therewith, the complainant’s grant would be void in its inception. This is not similar to cases of pat» ents considered void for want of authority m law, in the officer, to emanate the patent for the land which it covers. Nor is it perceived, even in such cases, how a court of chancery could entertain a bill to vacate a patent; for, if it appears, upon inquiry, to have emanated without authority, it would be regarded as a mere nullity in a court of law, as well as in a court of chancery; for such a patent would vest neither a legal, nor an equitable title: especially would such a proceeding be unnecessary undor the statutes of this state, which vest a purchaser, at the public sales, with a legal title, without a patent; and if both parties held patents, that which wag *492 issued upon competent authority would prevail over that which issued* without authority, or in opposition to the act of congress.
This court is bound to notice the law of the land and the constitution of the United States; and acts of congress made in pursuance thereofarethe supreme law. The facts set forth in the bill, and the demurrer thereto, bring these laws directly under consideration. If the complainant, then, has not shown any right to institute this inquiry, or any interest in the result, the charge of fraud, as having been commtted by Claiborne, the purchaser of White’s claim on the United States, cannot be gone into. It will be time enough to enter upon that dangerous and delicate inquiry, when the general government, which appears to be alone interested in this case, shall authorize her tribunals to inquire whether el fraud has been committed.
It is certainly very alarming to the land holders in this state, to be re. «quired, at this remoto period, to bring forward again that evidence of title which was required in 1804.-4-5, and to re-investigate that evidence to be informed that, although the act of congress, passed in 1803, for their benefit, and which declares that they should prove their claims to the satisfaction of the board of commissioners, and that the commissioners’ decision should be final; yet, that after the lapse of from twenty to thirty years, these decisions are subject to be inquired into and reversed, and, especially, when those decisions were made upon the evidence of witnesses who may be dead. The situation and powers of the board of commissioners In issuing a certificate of title, are wholly different fi-om that of the president in signing a patent. The former act in a judicial, the latter only in an executive capacity. The board ofcomissioners are created judges of the validity of the titles: it was their opinion that their deci sions were final, as to the United States, but not as to individuals, inasmuch as they were guaranteed a trial of facts by a jury, and, as far as I am informed, the courts of the country, from the year 1803 to the present time, have entertained the same opinion.
But I will not enlarge on this branch of the subject, as the preliminary one rcuders such a discussion unnecessary.
Judges Black, Cage and Nicholson concur.